UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61895-CIV-COHN/SELTZER

ACUSHNET COMPANY, et al.,

Plaintiffs,

vs.

ONLINEGOLFSALE.US, et al.,

Defendants.

_____/

**ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF**
**TEMPORARY RESTRAINING ORDER AND SETTING HEARING**
**ON MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** is before the Court on Plaintiffs' *Ex Parte* Application for Entry of

Temporary Restraining Order and Preliminary Injunction [DE 5] ("Application for

Temporary Restraining Order"). The Court has carefully considered the Application for

Temporary Restraining Order and is otherwise fully advised in the premises.

Plaintiffs[1] move *ex parte* pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65 and

The All Writs Act, 28 U.S.C §1651(a), for entry of a temporary restraining order, and

upon expiration of that order, a preliminary injunction against Defendants,[2] for alleged

violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

_____

[1] Plaintiffs are Acushnet Company ("Acushnet"), Callaway Golf Company ("Callaway Golf"), Roger Cleveland Golf Company, Inc. and SRI Sports Limited (jointly "Cleveland Golf"), Karsten Manufacturing Corporation ("Karsten"), and Taylor Made Golf Company, Inc. ("TaylorMade-adidas Golf") (collectively "Plaintiffs").

[2] Defendants are the Partnerships and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants").

1

## I.      **Factual Background**

The Court bases this Order on the following facts from Plaintiffs' Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions:

1.      Plaintiff Acushnet is the owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively, the "Acushnet Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TITLEIST | 316,118 | August 14, 1934 | IC 028 - golf balls |
| TITLEIST | 934,406 | May 23, 1972 | IC 028 - golf equipment comprising golf balls, golf clubs, golf bags, golf gloves and golf headcovers |
| *Titleist* | 1,155,766 | May 26, 1981 | IC 028 - golf equipment, namely, golf balls, golf clubs and golf bags |
| *Titleist* | 1,601,034 | June 12, 1990 | IC 028 -  golf balls |
| PRO V1 | 2,806,919 | January 20, 2004 | IC 028 - golf balls |
| TITLEIST | 3,176,825 | November 28, 2006 | IC 025 - headwear |
| AP2 | 3,831,911 | August 10, 2010 | IC 028 - golf clubs |
| AP2 | 3,831,914 | August 10, 2010 | IC 028 - golf clubs |
| FOOT-JOY | 1,198,007 | June 15, 1982 | IC 022 - dress shoes, casual shoes, golf shoes, athletic shoes, belts, socks and golf gloves |

The Acushnet Marks are used in connection with the manufacture of golf equipment and related products. See Declaration of Lisa Rogan in Support of Plaintiffs' Application for Temporary Restraining Order ("Rogan Decl.") ¶¶ 4, 5; see also United States

Trademark Registrations of the Acushnet Marks at issue attached as Composite Exhibit A to the Rogan Decl.

2.     Plaintiff Callaway Golf is the owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively, the "Callaway Golf Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| Odyssey | 1,704,295 | July 28, 1992 | IC 028 - golf clubs, golf bags, golf club heads, golf club shafts, head covers for golf clubs, hand grips for golf clubs, and golf balls |
| Callaway Golf | 2,160,157 | May 26, 1998 | IC 024 - golf towels<br>IC 025 - shirts, sweaters, jackets, hats, caps and visors<br>IC 028 - golf clubs, golf bags, and golf club head covers |
| Callaway GOLF | 2,161,569 | June 2, 1998 | IC 024 - golf towels<br>IC 025 - shirts, sweaters, jackets, hats, caps, and visors<br>IC 028 - golf clubs, golf bags, and golf club head covers |
| Callaway | 2,166,033 | June 16, 1998 | IC 028 - golf clubs |
| Callaway | 2,360,664 | June 20, 2000 | IC 028 - golf balls |
| Big Bertha | 2,769,319 | September 30, 2003 | IC 028 - golf club, golf club head covers and golf bags |
| FT-i | 3,263,223 | July 10, 2007 | IC 028 - golf clubs |
| FT-9 | 3,593,203 | March 17, 2009 | IC 028 - covers for golf clubs; golf club covers; golf clubs |
| BIG BERTHA DIABLO | 3,595,821 | March 24, 2009 | IC 028 - golf clubs; head covers for golf clubs; golf bags; golf balls |

3

| *Callaway* | 3,677,707 | September 1, 2009 | IC 028 - golf bags; golf balls; golf clubs; head covers for golf clubs |
| FT-iZ | 3,737,687 | January 12, 2010 | IC 028 - golf clubs, golf club head covers, golf bags and component club heads |
| X-24 HOT | 3,874,857 | November 9, 2010 | IC 028 - golf clubs |
| RAZR Hawk | 3,979,419 | June 14, 2011 | IC 028 - golf clubs |

The Callaway Golf Marks are used in connection with the manufacture of golf equipment and related products. See Declaration of Sonia Lari in Support of Plaintiffs' Application for Temporary Restraining Order ("Lari Decl.") ¶¶ 4, 5; see also United States Trademark Registrations of the Callaway Golf Marks at issue attached as Composite Exhibit A to the Lari Decl.

3.    Plaintiff Cleveland Golf is the owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively, the "Cleveland Golf Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| *Cleveland* | 2,070,051 | June 10, 1997 | IC 018 - carry all bags and umbrellas.<br>IC 025 - golf apparel, namely, shirts, caps, visors, sweatshirts and sweater vests.<br>IC 028 - golf clubs, golf club heads, golf club shafts, golf club grips, golf bags, golf bag covers, and golf club head covers. |

| CLEVELAND | 2,070,054 | June 10, 1997 | IC 018 - carry all bags and umbrellas.<br><br>IC 025 - golf apparel, namely, shirts, caps, visors, sweatshirts and sweater vests.<br><br>IC 028 - golf clubs, golf club heads, golf club shafts, golf club grips, golf bags, golf bag covers, and golf club head covers. |
|---|---|---|---|
| Ⓒ | 2,302,251 | December 21, 1999 | IC 028 - golf clubs, and golf club heads, namely, woods, irons and putters |
| SRIXON | 2,993,532 | December 16, 1997 | IC 025 - Golf wear, namely, caps.<br><br>IC 028 - Bags, namely, golf bags, equipment for golf, especially, but not limited to, golf balls, golf clubs. |
| ZIP GROOVES | 3,463,468 | July 8, 2008 | IC 028 - Golf clubs and golf club heads, namely, wedges, iron-type golf clubs and metal wood-type golf clubs and heads. |

The Cleveland Golf Marks are used in connection with the manufacture of golf equipment and related products. See Declaration of Stephen Gingrich in Support of Plaintiffs' Application for Temporary Restraining Order ("Gingrich Decl.") ¶¶ 4, 5; see also United States Trademark Registrations of the Cleveland Golf Marks at issue attached as Composite Exhibit A to the Gingrich Decl.

    4.    Plaintiff Karsten is the owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively, the "Karsten Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| PING | 704,552 | September 20, 1960 | IC 28 - Golf clubs. |
| RAPTURE | 3,249,950 | June 5, 2007 | IC 28 - Golf clubs. |
| *Rapture* | 3,262,365 | July 10, 2007 | IC 28 - Golf clubs. |
| G/10 | 3,454,841 | June 24, 2008 | IC 28 - Golf clubs. |
| *Rapture V2* | 3,538,346 | November 25, 2008 | IC 28 - Golf clubs. |
| RAPTURE V2 | 3,541,511 | December 2, 2008 | IC 28 - Golf clubs. |
| G15 | 3,696,930 | October 13, 2009 | IC 28 - Golf equipment, namely, golf clubs. |
| G15 | 3,716,878 | November 24, 2009 | IC 28 - Golf equipment, namely, golf clubs and golf bags. |
| K15 | 3,909,121 | January 18, 2011 | IC 25 - Headgear, namely caps and visors.<br>IC 28 - Golf club bags; Golf club covers; Golf clubs. |
| K15 | 3,949,344 | April 19, 2011 | IC 25 - Headgear, namely caps and visors.<br>IC 28 - Golf club bags; Golf clubs; Head covers for golf clubs. |
| PING | 1,647,448 | June 11, 1991 | IC 18 - Golf accessories, namely umbrellas and travelling bags. |
| G20 | 4,129,715 | April 17, 2012 | IC 28 - Golf bags; Golf clubs; Head covers for golf clubs |
| G20 | 4,129,186 | April 17, 2012 | IC 28 - Golf bags; Golf clubs; Head covers for golf clubs |
| G25 | 4,362,069 | July 2, 2013 | IC 28 - Golf bags; Golf clubs; Head covers for golf clubs |
| G25 | 4,373,160 | July 23, 2013 | IC 28 - Golf bags; Golf clubs; Head covers for golf clubs |

| *i20* | 4,129,738 | April 17, 2012 | IC 28 - Golf bags; Golf clubs; Head covers for golf clubs |
| I20 | 4,132,697 | April 24, 2012 | IC 28 - Golf bags; Golf clubs; Head covers for golf clubs |
| PING | 1,632,445 | January 22, 1991 | IC 28 - Sporting goods; namely, golf bags, golf balls, and head covers for golf clubs |
| PING | 3,230,098 | April 17, 2007 | IC 28 - Golf clubs for juniors, golf bags for juniors, golf gloves, and divot repair tools for golfers; Stress relief balls for hand exercise and golf ball tees |
| *i15* | 3,732,723 | December 29, 2009 | IC 28 - Golf equipment, namely, golf clubs and golf bags |
| I15 | 3,696,931 | October 13, 2009 | IC 28 - Golf equipment, namely, golf clubs |

The Karsten Marks are used in connection with the manufacture of golf equipment and related products. See Declaration of Jud Hawken in Support of Plaintiffs' Application for Temporary Restraining Order ("Hawken Decl.") ¶¶ 4, 5; see also United States Trademark Registrations of the Karsten Marks at issue attached as Composite Exhibit A to the Hawken Decl.

 5. Plaintiff TaylorMade-adidas Golf is the owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively, the "TaylorMade-adidas Golf Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TAYLOR MADE | 1,200,542 | July 6, 1982 | IC 028 - Golf Clubs. |
| TAYLOR MADE | 1,374,009 | December 3, 1985 | IC 028 - golf bags and golf club head covers. |

| BURNER | 1,411,498 | September 30, 1986 | IC 028 - golf clubs. |
|---|---|---|---|
| RESCUE | 2,092,034 | August 26, 1997 | IC 028 - golf clubs. |
| *TaylorMade* | 2,557,110 | April 2, 2002 | IC 018 - Golf umbrellas, luggage and bags, namely, non-canvas tote bags, for golfers. IC 025 - Clothing, namely, hats, visors, caps. IC 028 - Golf equipment, namely golf clubs, golf grips, putters, shafts, golf balls, golf gloves, golf tees, golf club covers, and golf bags. |
| *[T logo]* | 2,557,111 | April 2, 2002 | IC 018 - Golf umbrellas, luggage and bags, namely, non-canvas tote bags, for golfers. IC 025 - Clothing, namely, hats, visors, caps, shirts, skirts, blouses, sweaters, slacks, shorts, jackets, coats, pullovers, cardigans and shoes. IC 028 - Golf equipment, namely golf clubs, golf grips, putters, shafts, golf balls, golf gloves, golf tees, golf club covers, and golf bags. |
| ROSSA | 2,820,220 | March 2, 2004 | IC 028 - Golf equipment, namely, golf clubs, golf grips, putters, shafts, golf club covers, and golf bags. |
| R7 | 2,960,850 | June 7, 2005 | IC 028 - Golf equipment, namely, golf clubs, wedges, irons, golf club heads, golf club shafts. |
| *r7 logo* | 3,032,873 | December 20, 2005 | IC 028 - Golf equipment, namely, golf clubs, shafts, golf club covers. |
| R9 | 3,652,607 | July 7, 2009 | IC 028 - Golf equipment, namely, golf clubs, golf heads, golf club shafts. |

8

| BURNER PLUS | 3,673,923 | August 25, 2009 | IC 028 - Golf clubs. |
|---|---|---|---|
|  | 3,868,743 | October 26, 2010 | IC 028 - golf equipment, namely, golf clubs, shafts, golf balls, golf gloves, golf club covers and golf bags. |
| R11 | 3,951,066 | April 26, 2011 | IC 028 - Golf equipment, namely, golf clubs, golf grips, golf club heads, golf club shafts, and golf bags. |

The TaylorMade-adidas Golf Marks are used in connection with the manufacture of golf equipment and related products. See Declaration of Jeni B. Zuercher in Support of Plaintiffs' Application for Temporary Restraining Order ("Zuercher Decl.") ¶¶ 4, 5; see also United States Trademark Registrations of the TaylorMade-adidas Golf Marks at issue attached as Composite Exhibit A to the Zuercher Decl.

6.     Defendants, through the Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, and/or sold, at least, (i) golf clubs, golf balls, golf bags, golf headcovers, golf gloves, headwear, golf shoes, and soft goods, bearing what Plaintiff Acushnet has determined to be counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks; (ii) golf clubs, golf balls, golf bags, and caps bearing what Plaintiff Callaway Golf has determined to be counterfeits, reproductions, and/or colorable imitations of the Callaway Golf Marks; (iii) golf clubs and golf bags bearing what Plaintiff Cleveland Golf has determined to be counterfeits, reproductions, and/or colorable imitations of the  Cleveland Golf Marks; (iv) golf clubs, golf bags, and umbrellas bearing what Plaintiff Karsten has determined to be counterfeits, reproductions, and/or colorable imitations of the Karsten Marks; and (v) golf clubs, golf

9

putters, golf bags, and apparel bearing what Plaintiff TaylorMade-adidas Golf has determined to be counterfeits, reproductions, and/or colorable imitations of the TaylorMade-adidas Golf Marks. See Rogan Decl. ¶¶ 8-14; Lari Decl. ¶¶ 8-14; Gingrich Decl. ¶¶ 8-14; Hawken Decl. ¶¶ 8-14; Zuercher Decl. ¶¶ 8-14; Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Application for Temporary Restraining Order ("Gaffigan Decl.") ¶ 2 and Composite Exhibits A, B, C, D, and E to the Gaffigan Decl.

7.      Although each Defendant may not copy and infringe each Plaintiffs' individual trademarks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of the trademarks at issue. See Rogan Decl. ¶ 13; Lari Decl. ¶ 13; Gingrich Decl. ¶ 13; Hawken Decl. ¶ 13; Zuercher Decl. ¶ 13. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and TaylorMade-adidas Golf Marks (collectively, "Plaintiffs' Marks"). See Rogan Decl. ¶ 11; Lari Decl. ¶ 11; Gingrich Decl. ¶ 11; Hawken Decl. ¶ 11; Zuercher Decl. ¶ 11.

8.      Plaintiffs' representative reviewed and visually inspected the items bearing Plaintiffs' respective trademarks offered for sale through the Internet websites operating under the Subject Domain Names and determined the products to be unauthorized, non-genuine versions of Plaintiffs' products. See Rogan Decl. ¶¶ 12-14; Lari Decl. ¶¶ 12-14; Gingrich Decl. ¶¶ 12-14; Hawken Decl. ¶¶ 12-14; Zuercher Decl. ¶¶ 12-14.

## II.   **LEGAL STANDARD**

In order to obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc., 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty., 415 U.S. 423, 439 (1974).

## III.   **ANALYSIS**

The declarations Plaintiffs have submitted in support of their Application for Temporary Restraining Order support the following conclusions of law:

11

A.      Plaintiffs have a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of golf clubs, golf putters, golf balls, golf bags, golf headcovers, golf gloves, headwear, golf shoes, umbrellas, and soft goods bearing counterfeits, reproductions and/or colorable imitations of the Plaintiffs' Marks, and that the products Defendants are selling and promoting are copies of Plaintiffs' respective products that bear copies of the Plaintiffs' Marks on golf clubs, golf putters, golf balls, golf bags, golf headcovers, golf gloves, headwear, golf shoes, umbrellas, and soft goods.

B.      Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiffs' Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

1.      Defendants own or control Internet website businesses which advertise, promote, offer for sale, and sell, at least golf clubs, golf putters, golf balls, golf bags, golf headcovers, golf gloves, headwear, golf shoes, umbrellas, and soft goods bearing counterfeit and infringing trademarks in violation of Plaintiffs' rights;

2.      There is good cause to believe that more counterfeit and infringing products bearing Plaintiffs' respective trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for its genuine products; and

3.      There is good cause to believe that if Plaintiffs proceed on notice to Defendants on this Application for Temporary Restraining Order, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief.

C.      The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations and goodwill as manufacturers and distributors of quality products, if such relief is not issued.

D.      The public interest favors issuance of the temporary restraining order in order to protect Plaintiffs' respective trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of Plaintiffs.

## IV.      CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Application for Temporary Restraining Order [DE 5] is hereby **GRANTED** as follows:

(1)      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

       b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks.

(2)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendants having notice of this Order shall immediately discontinue the use of the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

(3)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendants having notice of this Order shall immediately discontinue the use of the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4)     Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

(5)     The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiffs' counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

(6)     Upon Plaintiffs' request, the privacy protection service for any Subject Domain Names for which the Registrant uses such privacy protection service to conceal the Registrant's identity and contact information are ordered to disclose to Plaintiffs the true identities and contact information of those Registrants;

(7)     Upon entry of this Order, Plaintiffs shall provide a copy of the Order by email to the registrar of record for each of the Subject Domain Names, so that the registrar of record of each of the Subject Domain Names may, in turn, notify each registrant of the Order and provide notice of the locking of the domain name to the registrant of record. After providing such notice to the registrars so the domain names may be locked, Plaintiffs shall also provide notice and a copy of this Order to the registrant of each Subject Domain Name via email to the email address provided as part of the domain registration data for each of the Subject Domain Names identified in the Application for Temporary Restraining Order. If an email address was not provided as part of the domain registration data for a Subject Domain Name, Plaintiffs shall provide notice and a copy of this Order to the operators of the Internet websites via an email address and/or online submission forms provided on the Internet websites operating under such Subject Domain Names. After forty-eight (48) hours have elapsed after the emailing of this Order to the registrars of record and the registrants, Plaintiffs shall

provide a copy of this Order to the registrars and the registries for the Subject Domain Names for the purposes described in Paragraph 8, below;

(8)     The domain name Registrars for the Subject Domain Names shall immediately assist in changing the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, to a holding account with a Registrar of Plaintiffs' choosing (the "New Registrar"). To the extent the Registrars do not assist in changing the Registrars of record for the domains under their respective control within one (1) business day of receipt of this Order, the top-level domain (TLD) Registries (or their administrators) for the Subject Domain Names, within five (5) business days of receipt of this Order, shall, change or assist in changing, the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registries have been notified in writing by Plaintiffs have been or will be dismissed from this action, to a holding account with the New Registrar. As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action. Upon the change of the Registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/gwg5/index.html   whereon copies of the Complaint and all other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the

Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, Temporary Restraining Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the New Registrar or Defendants;

(9)     Plaintiffs may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name or website and thereby evade the provisions of this Order;

(10)    Each Defendant shall preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(11)    This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

(12)    This Temporary Restraining Order shall apply to the Subject Domain Names, associated websites, and any other domain names and websites properly brought to the Court's attention and verified by sworn affidavit that such new domain names are being used by Defendants for the purpose of counterfeiting the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-

adidas Golf Marks at issue in this action and/or unfairly competing with Plaintiffs on the World Wide Web;

(13)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiffs shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court;

(14)     Plaintiffs shall serve a copy of the Complaint, the Application for Temporary Restraining Order, this Order, and all other pleadings and documents on file in this action on each Defendant as described above and by posting copies of the Application for Temporary Restraining Order and this Order on the website located at http://servingnotice.com/gwg5/index.html within forty-eight (48) hours of control of the Subject Domain Names being changed to the Court via the New Registrar's holding account, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at http://servingnotice.com/gwg5/index.html or by other means reasonably calculated to give notice which is permitted by the Court.

(15)     A hearing before this Court is **SET** for **September 25, 2013, at 10:00 a.m.**, in Courtroom 203E of the United States Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida. At that hearing, Defendants and/or any other affected persons may challenge the appropriateness of this order and move to dissolve the same, and the Court will hear argument on Plaintiffs' Motion for Preliminary Injunction;

18

(16)   By **September 23, 2013,** Defendants and/or any other affected persons shall file with the Court and serve on Plaintiffs' counsel any Response to Plaintiffs' Motion for Preliminary Injunction.  Plaintiffs shall file and serve any Reply by **Noon on September 24, 2013.** These dates may be revised upon stipulation by all parties and by approval of the Court;

(17)   By **2 p.m. on September 24, 2013,** Plaintiffs, Defendants, and/or any other affected persons shall file Witness Lists identifying any witnesses that the parties expect to call at the preliminary-injunction hearing.  At the option of the parties, direct testimony may be submitted in the form of written affidavits; however, all affiants will be subject to live cross examination at the hearing.

(18)   Also by **2 p.m. on September 24, 2013,** Plaintiffs, Defendants, and/or any other affected persons shall file Exhibit Lists identifying any exhibits that the parties intend to introduce at the preliminary-injunction hearing.  All exhibits shall be pre-labeled in accordance with the proposed Exhibit Lists.  Exhibit labels must include the case number; and

(19)   **Defendants are hereby notified that if they do not timely respond to Plaintiffs' Motion for Preliminary Injunction and do not appear at the scheduled hearing, the Court may enter a preliminary injunction against them by default.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 13th day of September, 2013, at _10:30 A.M._

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to counsel of record via CM/ECF.

### SCHEDULE A
### DEFENDANTS BY DEFENDANT NUMBER AND SUBJECT DOMAIN NAMES

| Defendant Number | Defendant / Domain Name |
|---|---|
| 1 | onlinegolfsale.us |
| 2 | amateurgolfmall.com |
| 2 | amateurgolfstore.net |
| 2 | owngolfclubs.com |
| 3 | amateurgolfshop.net |
| 3 | eaglegolfshop.co.uk |
| 3 | everydaygolf.net |
| 4 | augolfbestprice.com |
| 4 | augolfbuyer.com |
| 5 | auscheapgolf.com |
| 6 | ausdiscountgolf.com |
| 6 | ausonlinegolf.com |
| 7 | bestgolfprice.com |
| 8 | bestonsalegolf.com |
| 8 | golfaustraliashop.com |
| 9 | buybestgolfjp.com |
| 10 | bestgolfondeals.com |
| 10 | buycheapgolfstores.com |
| 11 | buygolfonsale.com |
| 12 | augolfequipment.com |
| 12 | australiacheapgolf.com |
| 12 | cheapgolfaus.com |
| 13 | cheapgolfclubsau.com |
| 14 | cheapjpgolf.com |
| 14 | newgolfjp.com |
| 15 | daygolfstores.com |
| 15 | golfsalebest.com |
| 16 | economyonlinegolf.com |
| 16 | onlineeconomygolf.com |
| 17 | enjoygolfjp.com |
| 17 | mygolfjp.com |
| 18 | famousgolfset.com |
| 19 | golfcheapstores.com |
| 19 | golfclubstores.co.uk |
| 20 | golfclubsjourney.com |
| 20 | golfoutletstore.us |
| 20 | likegolfmall.com |
| 21 | golfclubs-jp.com |
| 22 | golfdiscountjp.com |

| 23 | golfjpn.com |
|----|-------------|
| 24 | golfmalljapan.com |
| 25 | golfmarketusa.com |
| 26 | golfmartbuy.com |
| 26 | golfstoreoutlet.us |
| 27 | golfmartjp.com |
| 28 | golfmartus.com |
| 29 | buygolfdirect.co.uk |
| 29 | golfsaleday.com |
| 30 | golfsaleshop.co.uk |
| 30 | salegolfshop.co.uk |
| 31 | golfsaleshops.com |
| 31 | golfsportstool.co.uk |
| 32 | golfsalesupply.co.uk |
| 33 | golfonbestprice.com |
| 33 | golfsalewarehouse.net |
| 34 | golfsalewholesale.com |
| 35 | golfsclubwarehouse.com |
| 36 | golfshoponsale.co.uk |
| 37 | golfshopsoutlet.com |
| 37 | warehousegolfstore.net |
| 38 | 118golfshop.com |
| 38 | golfshoptee.com |
| 38 | golfstuffmarket.com |
| 39 | golfwarehousejp.com |
| 40 | golfzonefr.com |
| 41 | greatsalegolf.com |
| 42 | hotgolfuk.co.uk |
| 42 | ukhotgolf.co.uk |
| 43 | golfbestbuy.co.uk |
| 43 | igolfshoppinguk.com |
| 43 | ordergolfhere.com |
| 43 | topgolfbestsale.com |
| 44 | ingolfstores.com |
| 45 | japanesegolfsale.com |
| 46 | jpgolfbuy.com |
| 46 | jpgolfcheap.com |
| 47 | bestgolfonsale.co.uk |
| 47 | jpshoppinggolf.com |
| 47 | progolfmart.net |
| 48 | kengolfstores.com |
| 48 | topgolfsale.org |
| 49 | gropgolfsale.com |

| 49 | luckgolfstores.com |
|----|---------------------|
| 50 | londongolfclub.co.uk |
| 50 | nicegolfonline.co.uk |
| 51 | golfretaileronline.com |
| 51 | onlinegolfaus.com |
| 52 | hotgolfdeals.co.uk |
| 52 | salegolfonline.co.uk |
| 53 | bestpricegolfsale.com |
| 53 | salegolfonstore.com |
| 54 | seegolfclub.com |
| 55 | storegolfonline.com |
| 56 | teegolfshop.com |
| 57 | eaglegolf.co.uk |
| 57 | ukbestpricegolf.com |
| 58 | shopsalegolf.com |
| 58 | ukgolfclubstore.com |
| 59 | ukgolfsupply.co.uk |
| 59 | ukgolfsupply.com |
| 60 | vickysgolf.com |